24-646-cv
*Ohio Pub. Emps. Ret. Sys. v. Discovery, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of November, two thousand twenty-four.

PRESENT:     DENNIS JACOBS,
             SARAH A. L. MERRIAM,
                  *Circuit Judges*,
             JOHN P. CRONAN,
                  *District Judge.*\*

_____

OHIO PUBLIC EMPLOYEES RETIREMENT
SYSTEM; STATE TEACHERS RETIREMENT
SYSTEM OF OHIO,

    *Plaintiffs-Appellants*,

COLLINSVILLE POLICE PENSION BOARD
ON BEHALF OF THE COLLINSVILLE
POLICE PENSION FUND, Individually and
On Behalf of All Others Similarly Situated;
TOME TODOROVSKI, Individually and On
Behalf of All Others Similarly Situated;
VIOLETA TODOROVSKI, Individually and

---

\* Judge John P. Cronan of the United States District Court for the Southern District of New York, sitting by designation.

On Behalf of All Others Similarly Situated,

    *Plaintiffs*,

      v.                                     No. 24-646-cv

DISCOVERY, INC.; WARNER BROS.
DISCOVERY, INC.; DAVID ZASLAV;
GUNNAR WIEDENFELS; ADVANCE/
NEWHOUSE PARTNERSHIP; ADVANCE/
NEWHOUSE PROGRAMMING
PARTNERSHIP; STEVEN A. MIRON;
ROBERT J. MIRON; STEVEN O.
NEWHOUSE,

    *Defendants-Appellees*.

_____

| | |
|---|---|
| FOR PLAINTIFFS-APPELLANTS: | JONATHAN BERRY, Boyden Gray PLLC, Washington, D.C. (R. Trent McCotter, Boyden Gray PLLC, Washington, D.C.; Daniel L. Berger, Grant & Eisenhofer P.A., New York, NY; Dave Yost, Attorney General State of Ohio, Columbus, OH, *on the brief*). |
| FOR DEFENDANTS-APPELLEES DISCOVERY INC.; WARNER BROS. DISCOVERY, INC.; DAVID ZASLAV; GUNNAR WIEDENFELS: | JONATHAN POLKES, Weil, Gotshal & Manges LLP, New York, NY (Daniel Lifton, Caroline Zalka, Weil, Gotshal & Manges LLP, New York, NY; Joshua M. Wesneski, Weil, Gotshal & Manges LLP, Washington, D.C., *on the brief*). |
| FOR DEFENDANTS-APPELLEES ADVANCE/NEWHOUSE PARTNERSHIP; ADVANCE/ NEWHOUSE PROGRAMMING PARTNERSHIP; STEVEN A. MIRON; ROBERT J. MIRON; STEVEN O. NEWHOUSE: | Jaren Janghorbani and Paul A. Paterson, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY. |

Appeal from an order of the United States District Court for the Southern District of New York (Caproni, *J.*).

**UPON DUE CONSIDERATION**, the February 5, 2024, judgment of the District Court is **AFFIRMED**.

Plaintiffs-appellants Ohio Public Employees Retirement System and the State Teachers Retirement System of Ohio (collectively, "Appellants"), both of which are Ohio public pension funds, appeal from the District Court's dismissal of their amended class action complaint ("Amended Complaint"), with prejudice, for failure to state a claim.

On April 8, 2022, Discovery, Inc. ("Discovery") and AT&T, Inc.'s WarnerMedia business merged to form Warner Bros. Discovery, Inc. ("WBD"), a publicly-traded media and entertainment company. As a result of the merger, Appellants' shares in Discovery and AT&T were converted into over two million shares of WBD common stock. Appellants purchased additional shares of WBD common stock in the open market between April 18, 2022, and June 24, 2022. Between April and August 2022, WBD made two downward revisions to its projected yearly earnings, and the price of WBD's stock dropped from the $24.47 per share merger exchange rate on April 8, 2022, to $14.59 at the close of trading on August 5, 2022.

Following this drop in share price, Appellants brought strict liability and negligence claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the

"Act"), 15 U.S.C. §§ 77k(a), 77*l*(a)(2), and 77*o*.[1] Principally, Appellants allege that Defendants made statements in their pre-merger offering documents and in an earnings call that were false or misleading.[2] Appellants contend that the pre-merger statements artificially inflated WBD's share price, causing Appellants to suffer damages when the share price fell after the merger.

For the reasons set forth below, we conclude that the District Court did not err in dismissing Appellants' Amended Complaint. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we recite only as necessary to explain our decision to affirm.

## STANDARD OF REVIEW

"We review a district court's dismissal pursuant to Rule 12(b)(6) *de novo*, assessing the legal sufficiency of the complaint, taking its factual allegations to be true

---

[1] Appellants bring Section 15 claims against Defendants David Zaslav, Gunnar Wiedenfels, Advance/Newhouse Partnership, Advance/Newhouse Programming Partnership, Steven A. Miron, Robert J. Miron, and Steven O. Newhouse.

[2] Appellants rely on and quote from Defendants' pre-merger offering documents – which they define as consisting of the Registration Statement, Prospectus, Information Statement, Form 424(b), and Amendment No. 2 – throughout their Amended Complaint. *See* Joint App'x at 50. Appellants also rely on and quote from several of Defendants' earnings calls – specifically, calls occurring on January 27, 2021; November 3, 2021; February 24, 2022; April 26, 2022; and August 4, 2022 – throughout the Amended Complaint. *See, e.g.*, Joint App'x at 29, 56, 74. We find that these offering documents and earnings calls are incorporated by reference into the Amended Complaint; the parties appear to agree, and both parties argue from these materials in their briefs on appeal. Accordingly, we may consider these materials in our review under Rule 12(b)(6). *See Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018) ("A complaint is also deemed to include any . . . materials incorporated in it by reference . . . ." (citation and quotation marks omitted)).

4

and drawing all reasonable inferences in [Appellants'] favor." *NexPoint Diversified Real Est. Tr. v. Acis Cap. Mgmt., L.P.*, 80 F.4th 413, 417 (2d Cir. 2023) (citation and quotation marks omitted). A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Litwin v. Blackstone Grp.*, 634 F.3d 706, 715 (2d Cir. 2011) (Section 11 and 12(a)(2) claims not alleging fraud are "subject only to the 'short and plain statement' requirements of Federal Rule of Civil Procedure 8(a).").

> Collectively, the language of sections 11 and 12(a)(2) creates three potential bases for liability based on registration statements and prospectuses filed with the SEC: (1) a misrepresentation; (2) an omission in contravention of an affirmative legal disclosure obligation; and (3) an omission of information that is necessary to prevent existing disclosures from being misleading.

*In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360 (2d Cir. 2010). "So long as a plaintiff establishes one of the three bases for liability under these provisions . . . in a Section 11 case, the general rule is that an issuer's liability is absolute." *Litwin*, 634 F.3d at 715-16 (citations and quotation marks omitted). Under Section 12(a)(2), defendants "may be held liable for mere negligence" in making one of these categories of misleading statements or omissions. *In re Morgan Stanley*, 592 F.3d at 359.

## DISCUSSION

On appeal, Appellants allege that WBD misled investors by: (1) failing to disclose that some of its streaming service subscribers were "non-paying" (because they received their streaming access as part of an AT&T bundle) or "non-core" (because they

subscribed to one of Discovery's secondary streaming services); (2) failing to disclose that WarnerMedia had stopped licensing content to third parties before the merger; and (3) failing to disclose that WarnerMedia's 2021 strategy of "simultaneous" direct-to-streaming and theatrical movie releases would continue into 2022.[3] There is no allegation that WBD had any affirmative legal obligation to disclose any of these matters; thus, to state a claim, the Amended Complaint must plausibly allege that the undisclosed information was "necessary to prevent existing disclosures from being misleading." *In re Morgan Stanley*, 592 F.3d at 360.

## I.    Number of Subscribers

Appellants allege that the offering documents made "specific representations about the number of subscribers," including that they "reported a total of 95.8 million subscribers for WBD's direct to consumer offerings as of December 31, 2021." Joint App'x at 60-61 (emphasis omitted). They claim that "[a]fter the Merger closed, WBD revised the numbers reported in the Offering Documents down by 10 million," revealing that WBD had failed to disclose that the 95.8 million subscriber number "included 10 million non-paying HBO and HBO Max subscribers who had not activated their accounts and 'non-core' Discovery subscribers." Joint App'x at 61.

Appellants do not contest the accuracy of the total subscriber numbers reported in

---

[3] In the Amended Complaint, Appellants allege that Defendants made six false or misleading statements or omissions. *See* Joint App'x at 26-29. The District Court found that all six theories of liability failed. *See generally Ohio Pub. Emps. Ret. Sys. v. Discovery, Inc.*, 715 F. Supp. 3d 483 (S.D.N.Y. 2024). On appeal, Appellants challenge that decision only as to three of the alleged misstatements or omissions, *see* Appellants' Br. at 42-65, and we limit our review accordingly.

the offering documents. In fact, the Amended Complaint highlights that the offering documents made clear that WarnerMedia's subscriber numbers for HBO Max included non-activated subscriptions. *See* Joint App'x at 61 (stating that HBO Max's subscriber numbers include "accounts that have access to HBO Max through a wholesale distributor (*including wholesale subscribers and subscribers receiving access through bundled services that may not have signed in*)" (emphasis in Amended Complaint)). The offering documents also explicitly indicated that "Discovery may refer to the aggregate number of subscriptions across its [direct-to-consumer] services as subscribers." Joint App'x at 219, 443, 653. Taken together, these disclosures accurately described how WarnerMedia and Discovery arrived at their pre-merger subscriber numbers – including that "non-paying" and "non-core" subscribers might be included. The failure to provide a specific accounting of how many such subscribers were included in the count was not "necessary to prevent existing disclosures from being misleading." *In re Morgan Stanley*, 592 F.3d at 360.

Appellants assign great weight to the fact that, after the merger, WBD adopted a new methodology for counting subscribers. *See* Joint App'x at 62 (citing a statement in an August 4, 2022, earnings call that "[c]onsistent with legacy Discovery policy, we will exclude such unactivated subscribers going forward") (emphasis omitted). But such a change of methodology *after* the merger does not render the *pre*-merger subscription numbers false or misleading. *See Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 99 (2d Cir. 2021) ("[A] violation of federal securities law cannot be premised upon a company's disclosure of accurate historical data." (citation

7

and quotation marks omitted)). The offering documents provided an accurate subscriber count based on disclosed methodology, which is not actionable even if investors would have preferred that Defendants had begun using the post-merger methodology earlier. *See Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014) (explaining that a corporation is not required "to disclose a fact in the offering documents merely because a reasonable investor would very much like to know that fact" (citation and quotation marks omitted)).

Accordingly, we agree with the District Court that the Amended Complaint fails to plausibly allege a violation of the Act based on this alleged omission.

## II.     Third-Party Licensing Strategy

Appellants allege that Defendants "did not disclose that WarnerMedia had halted licensing its content to third parties in favor of providing its content solely on the HBO Max streaming service." Joint App'x at 65. They assert that this change in strategy was first disclosed after the merger, in an August 4, 2022, earnings call, when WBD reported: "As part of a corporate initiative to prioritize HBO Max growth globally, new content licensing deals to third parties were largely halted and content was, in general, made exclusive to HBO Max." Joint App'x at 834. Appellants claim that the failure to disclose this information rendered the following affirmative pre-merger statements misleading: (1) "The television and film programming content that the WarnerMedia Business produces is also licensed to third parties for use as part of their various video services and platforms," Joint App'x at 65; (2) "Because the WarnerMedia Business's content is licensed to and distributed through third parties . . . WBD will be dependent upon the

8

maintenance of such licensing and distribution agreements with such third parties," Joint App'x at 67 (emphasis omitted); and (3) WarnerMedia "has over 100 active series being sold to over 20 platforms and outlets." Joint App'x at 68 (emphasis omitted).

The failure to disclose that, for a time, *new* third-party licensing deals were halted does not render the affirmative disclosures misleading. Nothing in the statements identified in the Amended Complaint suggests that new licensing deals were being negotiated. As the Amended Complaint acknowledges, WarnerMedia stated in the "Risk Factors" section of its pre-merger Registration Statement, Prospectus, and Form 424(b) that it would "be dependent upon the *maintenance*" of its existing third-party licensing deals, and that "[c]hanges in distribution strategy . . . may also drive changes in the licensee fees." Joint App'x at 66-67 (emphasis altered). WarnerMedia's decision to stop pursuing *new* licensing deals is therefore not inconsistent with its pre-merger statements about maintaining its *existing* licensing agreements.

The Amended Complaint does not plausibly allege that the offering documents omitted "information that is necessary to prevent existing disclosures from being misleading." *In re Morgan Stanley*, 592 F.3d at 360. Accordingly, we agree with the District Court that the Amended Complaint fails to plausibly allege a violation of the Act based on this alleged omission.

III. **Simultaneous-Release Strategy**

Finally, Appellants allege that Defendants failed to disclose that they planned to extend "WarnerMedia's strategy to bypass theatrical releases in favor of direct-to-streaming releases beyond what it had disclosed would occur for 2021." Joint App'x at

9

75. The Amended Complaint asserts that this omission rendered two statements in the offering documents misleading: (1) "WarnerMedia's content revenues consist primarily of licensing feature films for initial theatrical exhibition," Joint App'x at 75 (emphasis omitted); and (2) "WarnerMedia Business produces and releases feature films for initial exhibition in theaters, on HBO Max and, in 2021, simultaneously in theaters and HBO Max domestically." Joint App'x at 76 (emphasis omitted).

The Amended Complaint offers no support at all for the speculative claim that WarnerMedia continued to *simultaneously* release films in theaters and on streaming services. Rather, it appears that Appellants have erroneously conflated WarnerMedia's 2021 practice of releasing certain films *simultaneously* to streaming services and to theaters – a strategy Appellants contend was bad for profits – with WarnerMedia's 2022 practice of releasing certain films directly to streaming, and *other* films to theaters.

Appellants appear to believe that certain statements in the August 4, 2022, earnings call support an inference that the 2021 simultaneous-release strategy continued into 2022. But in that earnings call, WBD's CEO expressly stated that they had made a "strategic shift" away from direct-to-streaming release of "expensive films" because they "cannot find an economic case for it." Joint App'x at 837. This statement does not in any way suggest that the practice of *simultaneous* releases continued into 2022, rather than ending in 2021. Nor does it contradict WarnerMedia's pre-merger statements about simultaneous releases. As the District Court explained, WBD indicated in the earnings call that "it was *prioritizing* theatrical releases" as opposed to direct-to-streaming releases, "a position entirely consistent with WarnerMedia's previous statement that it

10

would *not* continue to release films simultaneously to HBO Max and to theaters in 2022."
*Ohio Pub. Emps. Ret. Sys. v. Discovery, Inc.*, 715 F. Supp. 3d 483, 501 (S.D.N.Y. 2024).

The Amended Complaint makes only purely conclusory allegations as to the simultaneous-release issue, which is insufficient to state a claim. *See Iqbal*, 556 U.S. at 678. But even assuming WarnerMedia *did* continue its simultaneous release strategy into 2022, the Amended Complaint does not allege that the failure to disclose this fact would have rendered the challenged statements misleading. The Amended Complaint simply describes WBD's announcement of a change in strategy, not an actionable omission. *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 811 (2d Cir. 1996) ("Such statements simply reflected company policy at the time; they were not promises to maintain that policy in the future, and thus were not rendered misleading by the company's subsequent consideration of an alternative plan." (footnote omitted)).

The Amended Complaint fails to plausibly allege that the statements in the offering documents were rendered misleading because Defendants failed to disclose that they planned to continue a simultaneous-release strategy into 2022 – an allegation that is purely speculative in any event. Accordingly, we agree with the District Court that the Amended Complaint fails to plausibly allege an actionable omission under this theory.

In sum, we conclude that the Amended Complaint does not plausibly allege a claim pursuant to Sections 11 and 12(a)(2) of the Act. The failure to state a claim under these provisions necessarily means that the Amended Complaint also fails to state a claim pursuant to Section 15. *See In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 109 (2d Cir.

11

2013) ("To establish section 15 liability, a plaintiff must first show a primary violation of section 11." (citation and quotation marks omitted)); *Rombach v. Chang*, 355 F.3d 164, 177-78 (2d Cir. 2004) (affirming dismissal of "secondary claims" under Section 15 after affirming dismissal of Section 11 and 12(a)(2) claims); Joint App'x at 101-04 (conceding in the Amended Complaint that Appellants' Section 15 claims are derivative of their Section 11 and 12(a)(2) claims).

*　　　*　　　*

We have considered Appellants' remaining arguments and find them to be without merit. Accordingly, for the foregoing reasons, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court